IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:18-cv-592

| | |
|---|---|
| MICHELE L. LIZZIO, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>GMRI, INC. d/b/a LONGHORN )<br>STEAKHOUSE )<br>)<br>Defendant. )<br>) | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

This is an action to redress discrimination by Defendant GMRI, Inc. (hereinafter, "LongHorn") against Plaintiff Michele L. Lizzio because of her disability, in violation of Title I of the American with Disabilities Act of 1990, as amended, 42 U.S.C. sections 12101 *et seq.* (hereinafter, "ADA"). Ms. Lizzio was prevented by Defendant from using accommodations that allowed her to adequately perform all the essential functions of her job; and was discharged by Defendant on or about April 17, 2017, because it refused to consider any reasonable accommodations for Ms. Lizzio. Plaintiff seeks full back pay and fringe benefits, as well as compensatory damages for humiliation and pain and suffering. She also seeks punitive damages for the wanton and intentional violation of her rights by Defendant.

## JURISDICTION

1. On August 2, 2017, Ms. Lizzio timely filed a charge with the Equal Employment Opportunity Commission (EEOC), numbered 430-2017-01995, alleging that she suffered retaliation and discrimination based on a disability at the hands of Defendant.

2. The EEOC sent Ms. Lizzio a right-to-sue (RTS) letter dated August 9, 2018, received by Ms. Lizzio sometime thereafter.

3. All conditions precedent to the filing of this action have been met by Plaintiff in that she has filed a timely complaint with the EEOC and has filed this action within 90 days of receiving a right-to-sue letter from the same.

4. Jurisdiction is conferred on this Court by 28 U.S.C. section 1331 and 42 U.S.C. sections 2000e-5 (f)(1) and 12117.

## PARTIES

5. Plaintiff is an adult resident and citizen of Mecklenburg County, North Carolina.

6. Defendant is a corporation organized under the laws of Florida with a principal place of business in Orlando, Florida. Defendant can be served through its registered agent, Corporate Creations Network, Inc., 15720 Brixham Hill Ave., Ste. 300, Charlotte, NC 28277.

7. Defendant owns and operates hundreds of restaurants across the United States doing business as *inter alia* LongHorn Steakhouse, Olive Garden, and The Capital Grille. Defendant owns and operates a restaurant doing business as LongHorn Steakhouse located at 16641 Statesville Rd. in Huntersville, North Carolina (hereinafter, the "Huntersville Restaurant").

8. Defendant at all relevant times has had more than 500 employees, and Defendant is an "employer" as that term is used in 42 U.S.C. section 12111(5).

9. Ms. Lizzio was an "employee" of Defendant, as that term is used in 42 U.S.C. section 12111(4). She worked for LongHorn from December 20, 2000 until she was formally terminated on April 18, 2017, the one-year anniversary of a devastating injury she suffered after falling from a ladder.

## FACTS

10. On December 20, 2000, LongHorn hired Ms. Lizzio as a manager at its restaurant in the university-area in Charlotte, North Carolina.

11. LongHorn promoted Ms. Lizzio to general manager of the Huntersville Restaurant in April 2003 and, again, to managing partner of the same restaurant in 2004.

12. As managing partner, Ms. Lizzio's primary job responsibilities included customer service, staff management, ordering, project management, scheduling, and all financial aspects of the restaurant.

13. Ms. Lizzio was a valuable asset to LongHorn and excelled in her work as managing partner. She was a dedicated employee, working up to 70 hours per work, or more. LongHorn consistently rated Ms. Lizzio as "highly successful" in annual performance reviews.

14. Ms. Lizzio earned several awards from LongHorn during her tenure as managing partner of the Huntersville restaurant.

15. In 2013, Ms. Lizzio received the Diamond Club Award, which celebrates managers of the top 5% of restaurants. LongHorn celebrated the achievements of the Huntersville Restaurant under her leadership: highest guest-count percentage improvement; highest sales percentage improvement; and highest annual-performance earnings improvement.

16. In 2016, the last year prior to her injury, Ms. Lizzio's restaurant in Huntersville received the "Team Excellence" and "Best Hourly Turnover Percentage" awards, given to those

restaurants achieving great operational results. LongHorn celebrated that the Huntersville restaurant, as managed by Ms. Lizzio, had the lowest employee turnover rate of the approximately 458 eligible restaurants nationwide.

17. In her 17-year tenure with LongHorn, Ms. Lizzio rarely lifted or moved a keg, unloaded boxes from a hand truck, or performed similar manual labor, none of which was an essential job function as managing partner.

18. Other employees of the restaurant, including the bar staff, were able to provide adequate coverage to use hand trucks and stock supplies, equipment, and bar materials. Defendant would suffer little to no operational consequence if other employees exclusively performed these and other manual labor functions.

19. On April 17, 2016, Ms. Lizzio shattered her leg when she fell from a ladder while away from work.

20. Ms. Lizzio suffered significant injuries to her left leg. The fall from the ladder shattered her tibial plateau, broke her tibia bone cleanly in half, fractured her fibula bone, and tore each of her anterior cruciate ligament (ACL), medial collateral ligament (MCL), and meniscus off the bone in her knee.

21. Three surgeons in Charlotte recommended that Ms. Lizzio elect to amputate her leg on that basis that surgery could not successfully repair the substantial damage.

22. After two days of searching, Ms. Lizzio found a surgeon, Dr. Kevin Stanley, who was willing to attempt surgery on her leg.

23. On April 19, 2016, Ms. Lizzio endured a seven-hour surgery that added a titanium rod, plate, and 25 pins to her left leg. Following the surgery, Ms. Lizzio's left leg features a permanent scar from her knee to her ankle, and she has no cartilage remaining in her left knee.

24. Ms. Lizzio took a medical leave of absence under the Family Medical Leave Act (FMLA) while she recovered from her injuries, including a period of bed rest lasting approximately three months. She drew on a long-term disability insurance policy administered by Defendant's its third-party benefits provider, the Reed Group.

25. In August 2016, Ms. Lizzio was invited to dinner with LongHorn's president, Todd Burrows, and vice president, Paul Leverie. Ms. Lizzio attended the dinner with the assistance of a cane to walk. She apologized to the executives for her absence from work.

26. The executives asked Ms. Lizzio whether she expected to recover enough to be able to return to work. Ms. Lizzio responded that she would "fight like hell" to return, but that she could not be sure. One of the executives responded, "You're family. Take as long as you need."

27. Ms. Lizzio fought to regain strength in her leg, including through intensive physical therapy and by working out up to two hours per day.

28. Before the end of 2016, Ms. Lizzio progressed from using a wheelchair, to walking with a cane, to walking without the assistance of any support device whatsoever.

29. On around October 11, 2016, Dr. Stanley told Ms. Lizzio she could expect to return to work at the Huntersville Restaurant no later than the beginning of January 2017, which date was given to LongHorn and the Reed Group. Dr. Stanley concluded that Ms. Lizzio would be ready to return to work before this day, but the decision was made to not rush her back during the busy holiday season.

30. A "Manager's Handbook" contains the formal policy of LongHorn with respect to workplace disability and compliance with the ADA, that is, in pertinent part,

> The Company is committed to employing and, when needed, reasonably accommodating individuals with disabilities. . . . Accommodations will be determined on a case-by-case basis, and may include, but are not limited to, by way of example,

> reallocation of non-essential job functions; reasonable leave of absence; reasonable modification of work schedule; obtaining or modifying equipment or devices; reassignment to another vacant position for which the team member is qualified; or in the case of a disabled employee with an identified guardian, involving the guardian in resolving performance-related issues.

31. In a series of communications, Ms. Lizzio requested that LongHorn accommodate her disability and allow her to return to work as a general partner at the Huntersville Restaurant.

32. LongHorn failed to follow its own formal policy for accommodating workplace disabilities and complying with the ADA.

33. On November 22, 2016, Dr. Stanley reported that Ms. Lizzio was physically able to return to work on January 2, 2017, with the only restrictions that she "start part time no more than 6 hours per day" (hereinafter, the "January 2 Note"). Dr. Stanley reported no other work restrictions with the January 2 Note.

34. Ms. Lizzio was no longer using a cane to assist her in walking, on or before November 22, 2016.

35. Ms. Lizzio was willing and able to return to work and successfully fulfill her job duties no later than January 2, 2017, and she communicated the same to Defendant.

36. On December 26, 2016, Ms. Lizzio had a conversation with Michael Vale, her boss and Defendant's director of operations, about her scheduled return to work. Mr. Vale told Ms. Lizzio that LongHorn would be happy to have her return to work under the sole restriction in Dr. Stanley's report. He reassured her that he was waiting only for human resources to approve her return to work.

37. Shortly thereafter, LongHorn requested that Ms. Lizzio return to her doctor and secure a second, revised work status report. Mr. Vale expressly asked that Dr. Stanley write a second

report with more specific and *less* permissive work restrictions, including further limitations on Ms. Lizzio's hours.

38. Mr. Vale represented to Ms. Lizzio that it was better to ease her back to work and reassured her that "we can change it every week," i.e., increase her work schedule as she continued to progress.

39. On December 28, 2016, per LongHorn's request, Ms. Lizzio provided the company with a revised work status report from Dr. Stanley (hereinafter, the "January 9 Note").

40. The January 9 Note indicated that Ms. Lizzio could begin work three days per week, with restrictions that she not lift more than 25 pounds and that she rest her leg every 90 minutes as needed.

41. Even subject to the work restrictions, as detailed in both the January 2 Note and in the revised January 9 Note, Ms. Lizzio was able to meet Defendant's requirements for light duty work as a general partner.

42. Defendant refused to allow Ms. Lizzio to return to work the work restriction from either the January 2 Note or the January 9 Note.

43. On January 17, 2017, Mr. Vale met Ms. Lizzio at a Starbucks coffee shop and notified her that she was terminated, effective immediately.

44. Mr. Vale informed Ms. Lizzio that LongHorn "just didn't feel comfortable with her medical condition" and considered her to be a "medical liability," if she was to return to work.

45. Defendant presumed that working as a general partner would expose Ms. Lizzio to danger and otherwise took a "paternalistic" attitude and approach to Ms. Lizzio's disability.

46. As of January 17, 2017, Ms. Lizzio's position as managing partner at the Huntersville Restaurant remained open.

47. The next day, January 18, 2017, LongHorn sent a letter to Ms. Lizzio via overnight delivery (the "January 18 Letter").

48. In the January 18 Letter, LongHorn:

   a. mischaracterized Dr. Stanley's January 2 and January 9 Notes by asserting that Dr. Stanley had concluded "with a degree of medical certainty" that Ms. Lizzio would not "be able to return to work – with or without reasonable accommodation – in the near or foreseeable future."

   b. informed Ms. Lizzio that, "based on operational needs," the company "regrettably [was] unable to hold [her] position" open any longer.

   c. expressed a commitment to accommodate Ms. Lizzio's medical condition by re-evaluating her status in three months, on or around April 18, 2017. LongHorn committed to placing her in an available manager-level position within reasonable proximity to her Huntersville Restaurant, if such a position became open and she was able to return to work.

49. In practice, LongHorn never attempted to accommodate Ms. Lizzio's limited work restrictions including by, for example, reallocating non-essential job functions and/or reasonably modifying her work schedule.

50. After receiving the January 18 Letter, Ms. Lizzio informed Mr. Vale that she was confused as to whether she was, in fact, fired. Mr. Vale responded that the January 18 letter was "just for legalities" and that she was, in fact, terminated.

51. Mr. Vale told Ms. Lizzio that she could return to work for LongHorn only if she was "100% healthy," that is without any disability.

52. LongHorn required that Ms. Lizzio provide the company with a full duty release, i.e., a note from a medical doctor indicating she had *zero* work restrictions, as a condition to continue her employment with the restaurant.

53. In other words, LongHorn refused to accommodate any disability whatsoever and, in so doing, acted with malice and/or reckless indifference to Ms. Lizzio's rights under the ADA.

54. LongHorn treated Ms. Lizzio's disability as disqualifying from employment as a manager of any of its restaurants.

55. Notwithstanding its representation to the contrary, the company had no intention of re-evaluating Ms. Lizzio's employment status at any time after January 18, 2017.

56. No later than February 3, 2017, Mr. Vale and Shane Brooks, Defendant's senior vice president, provided Ms. Lizzio with letters of recommendation for her use in seeking employment elsewhere.

57. On or after January 18, 2017, Ms. Lizzio made repeated efforts to learn more about her employment situation from representatives of LongHorn's human resources department, who informed her that she was not terminated so long as she continued to receive long-term disability benefits from Reed Group, that is until April 18, 2017.

58. LongHorn was ignorant to Ms. Lizzio's disability and work restrictions. For example, it is LongHorn position that Ms. Lizzio relied on a cane to assist her with walking, up to and through April 18, 2017. In fact, Ms. Lizzio had not relied on a cane to walk in approximately six months prior to the same date.

59. LongHorn terminated Ms. Lizzio's employment effective April 18, 2017, that is the one-year anniversary of her seven-hour surgery.

60. Notwithstanding her disability, LongHorn had no performance-based reason to terminate Ms. Lizzio's employment.

61. On or around April 18, 2017, no one from LongHorn communicated the decision to part ways with its employee of 17 years.

62. Ms. Lizzio learned that she had been terminated formally when she was contacted by Wells Fargo bank with options for transferring her 401(k) retirement savings account.

63. As a result of Defendant's insensitivity to Ms. Lizzio's disability and its discrimination against her, she has suffered and endured humiliation, damage to her reputation, mental and emotional distress, and/or pain and suffering.

64. On or around April 18, 2017, LongHorn also cashed out Ms. Lizzio's managing partner rewards stock, which she had earned over the years as a performance incentive.

65. As a matter of company policy, Ms. Lizzio was entitled to the cash value of her managing partner rewards because her employment was terminated due to disability.

66. By comparison, company policy required Ms. Lizzio to forfeit this stock if she had voluntarily terminated her employment, or had been terminated for cause.

67. Ms. Lizzio did not voluntarily terminate her employment, and LongHorn did not terminate her employment for cause.

68. The performance of LongHorn's Huntersville restaurant has suffered since Ms. Lizzio was terminated. Upon information and belief, the restaurant no longer wins company awards.

69. Ms. Lizzio has since found work as a salesperson for a life and supplemental insurance company. She earns significantly less in commission-based pay as compared to working for LongHorn.

# CAUSE OF ACTION: AMERICANS WITH DISABILITIES ACT
### (42 U.S.C. § 12101 *et seq.*)

70. Plaintiff incorporates herein by reference the preceding paragraphs.

71. Since her leg injury on April 17, 2016, Ms. Lizzio has had a physical impairment that substantially limits one or more major life activities, has a record of having such an impairment, and is regarded as having such an impairment.

72. Even after her recovery, Ms. Lizzio suffers a permanent disability in that she is unable run or jump, and she walks with a slight to moderate limp. Ms. Lizzio's leg continues to swell periodically.

73. Following the injury to her left leg, Ms. Lizzio is and has been a "disabled" individual as that term is used in 42 U.S.C. section 12102(1).

74. At all relevant times, Ms. Lizzio was qualified to perform the essential functions of her job as general partner at the Huntersville Restaurant, with reasonable accommodation, and to satisfy the skill, education, training, license, and other requirements for the job.

75. At all relevant times, Ms. Lizzio was willing to cooperate with Defendant in identifying and implementing reasonable work accommodations.

76. Defendant was unwilling to discuss accommodations with her and concluded, without evidence or input from Ms. Lizzio, that she could not return to work, even with reasonable accommodations.

77. LongHorn never analyzed whether Ms. Lizzio was able to perform essential job functions, or otherwise compared any of her work restrictions with the essential job functions of her position.

78. Notwithstanding the January 2 Note and the January 9 Note, Defendant never inquired or gathered any evidence as to whether Ms. Lizzio was able to perform any specific functions,

including but not limited to walking on tile, wood, concrete, and carpeting; static standing up to 60 minutes; kneeling, crouching and/or squatting; bending from the waist up; reaching forward above and below the shoulder line; and/or driving an automobile.

79. LongHorn never attempted to accommodate Ms. Lizzio's disability with reasonable work restrictions, including those detailed in the January 2 and/or January 9 Notes, which did not interfere with her ability to perform essential job functions.

80. No doctor or medical provider ever found that Ms. Lizzio was unable to perform any function that was an essential job function for her position as managing partner.

81. Defendant regarded Ms. Lizzio as having an impairment that substantially limited one or more of her major life activities, based at least in part on her noticeable limp.

82. Upon information and belief, one of the reasons Defendant did not make an offer to reasonably accommodate Ms. Lizzio's disability is because the company preferred not to employ a client-facing manager with a noticeable limp.

83. LongHorn unlawfully discriminated and retaliated against Ms. Lizzio due to her disability by failing to reasonably accommodate her work restrictions when they could have done so without undue hardship.

84. Defendant's refusal to provide or allow reasonable accommodations to Ms. Lizzio's disability such that she could continue to fulfill the essential functions of her job as a managing partner, its placing her on involuntary leave and denying her the opportunity to return to work on around January 18, 2017, and its discharge of her because of her disability on April 18, 2017, constitute discrimination in violation of the ADA.

85. Defendant's refusal to meaningfully explore reasonable accommodations for her disability, its placing of her on involuntary leave and denying her the opportunity to return to work,

its requirement that she could only return to work if she was "100% healthy" and able bodied, and its discharge of Ms. Lizzio, constitute gross, wanton, reckless, and/or intentional violations of her rights under the ADA, entitling her to punitive damages.

86. As a direct and proximate cause of Defendant's unlawful discrimination, Plaintiff has suffered damages and is entitled to full back pay, fringe benefits, compensatory damages for humiliation and pain and suffering, and punitive damages for the wanton and intentional violation of her rights by Defendant.

WHEREFORE Plaintiff Michele Lizzio respectfully requests that this Court:

1. declare that Plaintiff has suffered acts of discrimination at the hands of Defendant based on her disability;

2. award Plaintiff compensation for loss of salary and other benefits, including all fringe benefits to which she would have been entitled had her employment with Defendant not been interrupted, in an amount to be determined at trial;

3. award Plaintiff compensatory damages for the humiliation, damage to her reputation, mental and emotional distress, and pain and suffering that she has experienced and endured as a result of the discriminatory actions of Defendant towards her, in an amount to be determined at trial;

4. grant Plaintiff punitive damages against Defendant, in an amount to be determined at trial;

5. grant Plaintiff pre-judgment and post-judgment interest on all damages awarded, to the maximum extent allowed by law;

6. grant Plaintiff her reasonable costs and attorney's fees;

7. grant Plaintiff a trial by jury on all issues so triable; and

8. grant such other and further relief as to the Court seems just and proper.

This the 7th day of November, 2018.

/s/ Eric Spengler
Eric Spengler (NC Bar No. 47165)
SPENGLER & AGANS, PLLC
352 N. Caswell Rd.
Charlotte, NC 28204
eric@spengleraganslaw.com
Phone: (704)910-5469
Fax: (704) 730-7861

*Attorney for Plaintiff*